IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FIRST HOUSTON HEALTH CARE, L.L.C., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-14-3055 |
| SYLVIA MATHEWS BURWELL, Secretary, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, and PALMETTO GBA, L.L.C., | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, First Houston Health Care, L.L.C., ("First Houston"), brings this class action against defendants, Sylvia Mathews Burwell, Secretary of the United States Department of Health and Human Services ("Secretary"), and Palmetto GBA, L.L.C. ("PGBA"), for emergency mandamus and, alternatively, for judicial review, declaratory relief, compensatory damages, and attorney's fees arising from the revocation of plaintiff's Medicare billing privileges and termination of its provider agreement. Pending before the court are Secretary Burwell's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Docket Entry No. 13), Plaintiff's Motion for Limited Discovery on Jurisdictional Issues and Brief in Support Thereof (Docket Entry No. 27), and Plaintiff's Emergency Motion for

Mandamus Relief (Docket Entry No. 28). For the reasons stated below, the Secretary's Motion to Dismiss will be granted, and First Houston's Motion for Discovery and Emergency Motion for Mandamus Relief will be denied as moot.

## I.  **Factual Background**

First Houston is a home health care provider that at all relevant times was employing approximately 38 employees, treating approximately 90 patients, and receiving Medicare payments in amounts totaling approximately one million dollars a year. First Houston alleges that on April 30, 2014, it sent notice of an address change to PGBA, and that on June 1, 2014, it relocated its offices from 6300 Hillcroft Street, Suite 310, Houston, Texas, to 8303 S.W. Freeway, Suite 710, Houston, Texas. On or about June 26, 2014, PGBA conducted an enrollment audit at First Houston's former location, and in a letter dated September 11, 2014, PGBA notified First Houston that its Medicare billing privileges were being revoked and its provider agreement terminated effective June 26, 2014, because an on-site visit revealed that as of that date First Houston was no longer operating at the only address that PGBA had on file, i.e., 6300 Hillcroft, Suite 310, Houston, Texas. PGBA notified First Houston that if it disagreed with its revocation and termination it could request reconsideration from a hearing officer. First Houston requested reconsideration, and on October 16, 2014, PGBA notified First Houston that the decision to

-2-

revoke its Medicare billing privileges and terminate its provider agreement had been affirmed. PGBA also notified First Houston that it could request review by an Administrative Law Judge ("ALJ"). On October 24, 2014, First Houston filed this action.[1]

## II. **The Secretary's Motion to Dismiss**

The Secretary argues that this action is subject to dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, for failure to state a claim for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) because First Houston has failed to exhaust its administrative remedies as required by the Medicare provisions of the Social Security Act.

### A. **Standard of Review**

#### 1. Rule 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) governs challenges to the court's subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court

---

[1]Plaintiff's Original Complaint—Class Action for Emergency Mandamus and, Alternatively, Judicial Review, Including Application for TRO and Declaratory Relief, and for Compensatory Damages, and Attorneys Fees ("Plaintiff's Original Complaint"), Docket Entry No. 1, pp. 1-5, 12-14. See also Plaintiff's Emergency Motion to Extend *Ex Parte* Temporary Restraining Order, Docket Entry No. 12, and exhibits thereto; and Secretary Burwell's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim ("Secretary's Motion to Dismiss"), Docket Entry No. 13, pp. 3-4 (stating material facts).

lacks the statutory or constitutional power to adjudicate the case." Home Builders Association of Mississippi, Inc. v. City of Madison, Mississippi, 143 F.3d 1006, 1010 (5th Cir. 1998). "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Clark v. Tarrant County, Texas, 798 F.2d 736, 741 (5th Cir. 1986). Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. See Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981). A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings. Id. A factual attack challenges the existence of subject matter jurisdiction in fact -- irrespective of the pleadings -- and matters outside the pleadings -- such as testimony and affidavits -- are considered. Id. Because the Secretary has not submitted evidence outside First Houston's pleadings in support of her Rule 12(b)(1) motion to dismiss, the motion is a facial attack; and the court's review is limited to whether the complaint sufficiently alleges jurisdiction.[2] First Houston, as the party asserting federal jurisdiction, has the burden of showing that the jurisdictional

_____

[2]The underlying facts stated in § I, above, are not disputed.

-4-

requirement has been met.  <u>Alabama-Coushatta Tribe of Texas v.</u>
<u>United States</u>, 757 F.3d 484, 487 (5th Cir. 2014).  When facing a
challenge to subject matter jurisdiction and other challenges on
the merits, courts must consider the Rule 12(b)(1) jurisdictional
challenge before addressing the merits of the case.  <u>Id.</u>

### 2.    Rule 12(b)(6) Standard

Under Rule 8 of the Federal Rules of Civil Procedure, a
pleading must contain "a short and plain statement of the claim
showing that the pleader is entitled to relief."  Fed. R. Civ.
P. 8(a)(2).  A Rule 12(b)(6) motion tests the formal sufficiency of
the pleadings and is "appropriate when a defendant attacks the
complaint because it fails to state a legally cognizable claim."
<u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001), <u>cert.</u>
<u>denied sub nom</u> <u>Cloud v. United States</u>, 122 S. Ct. 2665 (2002).  The
court must accept the factual allegations of the complaint as true,
view them in a light most favorable to the plaintiff, and draw all
reasonable inferences in the plaintiff's favor.  <u>Id.</u>  To defeat a
motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead
"enough facts to state a claim to relief that is plausible on its
face."   <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974
(2007).  "A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged."
<u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Twombly</u>,

-5-

127 S. Ct. at 1965). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 127 S. Ct. at 1965). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 127 S. Ct. at 1966). When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)).

## B.  Applicable Law

Subchapter XVIII of the Social Security Act includes "Health Insurance Benefits for the Aged and Disabled," commonly known as the Medicare Act. See 42 U.S.C. § 1395, et seq. The Department of Health and Human Services ("DHHS"), through the Secretary, administers the Medicare program and has delegated this function to the Center for Medicare and Medicaid Services ("CMS"). The Medicare Act covers services furnished to beneficiaries by home health care providers such as First Houston. See 42 U.S.C. § 1395x(m); 42 C.F.R. Part 484. Medicare providers undergo a

-6-

process of survey and certification whereby a state agency or accrediting organization determines whether they comply with Medicare's participation requirements. See 42 U.S.C. §§ 1395aa, 1395bb. See also 42 C.F.R. § 424.510 (stating participation requirements). Home health care providers furnishing services to Medicare beneficiaries must enroll in the Medicare program and obtain a billing number. See 42 U.S.C. § 1395cc. Providers must also meet and maintain enrollment requirements set forth in the CMS regulations, i.e., 42 C.F.R. Part 424, subpart P (requirements for establishing and maintaining Medicare billing privileges). Enrollment confers program billing privileges, i.e., the right to claim and receive Medicare payment for health care services provided to the program's beneficiaries. See 42 C.F.R. §§ 424.502, 424.505. Changes to enrollment information, including, inter alia, a provider's practice location, must be reported to CMS within 90 days of a change. 42 C.F.R. § 424.516(e)(2).

A provider's Medicare billing privileges many be revoked and its provider agreement terminated for a number of reasons including, inter alia, failure to comply with any enrollment requirement and an on-site review showing that the provider is not operational. 42 C.F.R. § 424.535(a)-(b); 42 C.F.R. § 424.510(d)(6). Providers whose Medicare billing privileges are revoked and provider agreements terminated may pursue an administrative appeal under 42 C.F.R. Part 498. See 42 C.F.R. § 424.545(a) and (b). A provider begins the administrative appeal process by asking for reconsideration of the

decisions to revoke billing privileges and terminate provider agreements. 42 C.F.R. § 498.5(l). A provider that receives an unfavorable decision upon reconsideration may request a hearing before an ALJ. See 42 C.F.R. § 498.40. An unfavorable decision by an ALJ may be appealed to the Departmental Appeals Board ("Board"). 42 C.F.R. § 498.80. Following an unfavorable decision from the Board, a provider may seek judicial review in federal court. See 42 U.S.C. § 1395cc(h)(1)(a); 42 C.F.R. § 498.90.

The Medicare Act incorporates two key provisions of the Social Security Act dealing with judicial review of agency actions. The first key judicial review provision of the Social Security Act incorporated into the Medicare Act is 42 U.S.C. § 405(g), which provides a strict administrative exhaustion requirement as a prerequisite to judicial review:

> Any individual, after any final decision of [the Secretary] made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision. . . The findings of [the Secretary] as to any fact, if supported by substantial evidence, shall be conclusive. . . The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions.

The second key judicial review provision is 42 U.S.C. § 405(h). The Medicare Act, at 42 U.S.C. § 1395ii, provides that the provisions of § 405(h) "shall also apply with respect to this subchapter [Medicare] to the same extent as they are applicable with respect to subchapter 11 [Social Security]." Section 405(h) provides:

> The findings and decision of the [Secretary] after a
> hearing shall be binding upon all individuals who were
> parties to such hearing. No findings of fact or decision
> of the [Secretary] shall be reviewed by any person,
> tribunal, or governmental agency except as herein
> provided. No action against the United States, the
> Commissioner of Social Security, or any officer or
> employee thereof shall be brought under section 1331 or
> 1346 of Title 28 to recover on any claim arising under
> this subchapter.

The second sentence of § 405(h) precludes judicial review of the

Secretary's determinations under the Medicare Act pursuant to

§ 405(g) unless its exhaustion requirements are met. The third

sentence forecloses alternative routes of review under federal

question jurisdiction or jurisdiction based on the United States'

status as a defendant.

## C. **Analysis**

### 1. Subject Matter Jurisdiction

The Secretary moves to dismiss for lack of subject matter

jurisdiction, and First Houston moves for jurisdictional discovery.

These motions present the jurisdictional issue of whether an

exception applies to the administrative exhaustion requirements set

forth above if a Medicare provider may be unable to complete

administrative review because revocation of its billing privileges

and termination of its provider agreement effectively close that

provider's business. The Secretary argues that

> . . . Plaintiff is dissatisfied with . . . [the]
> Secretary's decision to revoke its Medicare billing
> privileges and its Medicare provider agreement. Instead
> of challenging that decision through the Secretary's
> administrative process, Plaintiff is attempting to bypass
> that process completely, seeking from this Court

injunctive relief to undo the revocation decision and a declaratory judgment finding that the revocation was improper. However, Congress has not provided this Court with jurisdiction to consider Plaintiff's claims. Plaintiff's request is barred by sovereign immunity as Congress has prohibited federal court jurisdiction to review the Secretary's decision unless and until Plaintiff has channeled its claims through the administrative process created by the Medicare statute. It is undisputed that Plaintiff has failed to do so.[3]

The Secretary explains that

> Plaintiff's billing privileges were revoked pursuant to 42 C.F.R. § 424.535(b) of the Secretary's regulations. The revocation ends Plaintiff's ability to submit claims to the Medicare Program. Since the "standing and substantive basis" of the Secretary's revocation is the Medicare Act and the revocation is "inextricably intertwined" with benefit determinations, Plaintiff's claims "arise under" the Medicare Act. *See Heckler v. Ringer*, 466 U.S. 602, 622-24 (1984); *Weinberger v. Salfi*, 422 U.S. 749, 760-61 (1975). As such, Plaintiff must exhaust its administrative remedies before seeking judicial review of the Secretary's revocation decision.[4]

Without disputing that providers must ordinarily exhaust their administrative remedies before seeking judicial review in federal court, First Houston argues that the Secretary's exhaustion defense does not apply to the claims asserted in this action because First Houston is not seeking benefits but, instead, is seeking to challenge the procedures used in administering the Medicare Act.[5]

---

[3]Secretary's Motion to Dismiss, Docket Entry No. 13, p. 1.

[4]*Id.* at 5.

[5]Plaintiff's Amended Response to Defendant HHS's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim ("Plaintiff's Amended Response"), Docket Entry No. 22-2, pp. 6-7.

Citing <u>Wolcott v. Sebelius</u>, 635 F.3d 757, 765 (5th Cir. 2011), First Houston argues that mandamus jurisdiction is available in exceptional cases such as this.[6] Alternatively, First Houston argues that this court has subject matter jurisdiction to review the revocation of its Medicare billing privileges under the "no review at all" exception to the exhaustion requirement recognized by the Supreme Court in <u>Shalala v. Illinois Council on Long Term Care, Inc.</u>, 120 S. Ct. 1084 (2000).[7]

(a) The "No Review At All" Exception Does Not Apply

Because First Houston conflates the <u>Illinois Council</u> analysis with questions of whether the procedural steps required by § 405(g) can be waived under <u>Mathews v. Eldridge</u>, 96 S. Ct. 893 (1976), and whether the "clandestine policy" exception recognized by the Supreme Court in <u>Bowen v. City of New York</u>, 106 S. Ct. 2022 (1986), apply to the facts of this case, the court will address all three possibilities for avoiding the exhaustion requirement.[8]

### (1) The Exception to the Exhaustion Requirement Recognized in <u>Illinois Council</u> Does Not Apply

The Supreme Court has determined that Congress intended an exception to the administrative exhaustion requirement in § 405(h),

---

[6] <u>Id.</u> at 8-11.

[7] <u>Id.</u> at 11-14. <u>See also</u> <u>id.</u> at 6 ("Plaintiff only asserts mandamus jurisdiction and, alternatively, the 'no review at all' exception to administrative exhaustion. . . .").

[8] <u>See</u> <u>id.</u> at 13-14.

where it "would not simply channel review through the agency, but would mean no review at all." Illinois Council, 120 S. Ct. at 1097 (construing Bowen v. Michigan Academy of Family Physicians, 106 S. Ct. 2133 (1986)). "Under this exception, a party may file a claim under the Medicare Act in federal court without first bringing it before the [Secretary] if further postponement of judicial review would have the effect of foreclosing judicial review entirely." Southwest Pharmacy Solutions, Inc. v. Centers for Medicare and Medicaid Services, 718 F.3d 436, 440-41 (5th Cir. 2013), cert. denied, 134 S. Ct. 898 (2014) (citing Illinois Council, 120 S. Ct. at 1098-99). The Secretary argues that the Illinois Council exception only applies in cases where there is no opportunity for any judicial review. Because First Houston is entitled to post-deprivation review, the Secretary argues that this exception does not apply. The court agrees with the Secretary that the Illinois Council exception does not apply here.

Asserting that almost all of its patients are covered by Medicare, First Houston argues that as a practical matter it will receive no review at all because its business will no longer be viable if its Medicare billing privileges are revoked and its provider agreement is terminated. First Houston argues that the fact that it is guaranteed to close its doors as a result of the Secretary's decisions means that it could not obtain any meaningful review if it is forced to exhaust its administrative remedies before seeking judicial review in federal court. But the cases

that have applied the "no review at all" exception recognized by the Supreme Court in Illinois Council make it clear that application of this exception does not depend on the timing of judicial review, but, instead, on whether the plaintiff is entitled to "no review at all." See Physician Hospitals of America v. Sebelius, 691 F.3d 649, 659 (5th Cir. 2012) (holding that financial hardship to plaintiffs in exhausting administrative remedies is no more than a delay-related hardship); Cathedral Rock of North College Hill, Inc. v. Shalala, 223 F.3d 354, 361 (6th Cir. 2000) ("[W]here the Secretary terminates a provider's agreement to participate in the Medicare program for failure to comply substantially with the agreement or the Medicare regulations, the provider is entitled to a hearing and then judicial review of the Secretary's final decision after the hearing . . . Application of § 1395ii and § 405(h) in this case will not prevent judicial review altogether; Beechknoll simply must exhaust its administrative remedies before this review can take place. Therefore, we conclude that the [Illinois Council and] Michigan Academy exception [are] not applicable in this case"; Council for Urological Interests v. Sebelius, 668 F.3d 704, 712 (D.C. Cir. 2011) (holding that the Illinois Council exception applied to a category of affected parties who could not seek administrative review as providers and therefore faced a serious practical roadblock to having their claims reviewed in any capacity, administratively or judicially). In Illinois Council, 120 S. Ct. at 1093, the Supreme Court

acknowledged that the delay involved in requiring "virtually all" claimants to exhaust their administrative remedies comes at a price, "namely, occasional individual, delay-related hardship," but explained that in the context of a massive health and safety program such as Medicare, "this price may seem justified." The Supreme Court has consistently drawn a distinction between "a total preclusion of review and postponement of review." Id. at 1097 (declining to apply a presumption in favor of preenforcement review, and citing Thunder Basin Coal Co. v. Reich, 114 S. Ct. 771, 776 n.8 (1994) (strong presumption against preclusion of review is not implicated by provision postponing review)).

The Illinois Council Court explained that the "no review at all" exception is not intended to remedy isolated delay-related cost and inconvenience, but is instead intended to deal with hardship likely found in many cases based on how the statute applies generally, resulting in a complete denial of judicial review:

[W]e do not hold that an individual party could circumvent § 1395ii's channeling requirement simply because that party shows that postponement would mean added inconvenience or cost in an isolated, particular case. Rather, the question is whether, as applied generally to those covered by a particular statutory provision, hardship likely found in many cases turns what appears to be simply a channeling requirement into *complete* preclusion of judicial review. . . Of course, individual hardship may be mitigated in a different way, namely, through excusing a number of the steps in the agency process, though not the step of presentment of the matter to the agency. . . But again, the Council has not shown anything other than potentially isolated instances

-14-

of the inconveniences sometimes associated with the postponement of judicial review.[9]

Illinois Council, 120 S. Ct. at 1098-99.  For example, in Council for Urological Interests, 668 F.3d at 712, the court found that an entire category of certain third parties lacked standing under the Medicare Act to bring an administrative claim and that there was no sufficient proxy to bring an administrative claim on their behalf. The court therefore held that the "no review at all" exception applied because this category of third parties had no judicial review at all.  Id.

First Houston has not shown that the Medicare Act generally applies to foreclose judicial review to a category of parties or claims.  Instead, First Houston has focused exclusively on the specific financial inconvenience that it will suffer if it cannot obtain judicial review prior to exhausting its administrative remedies.  Because once First Houston has exhausted its administrative remedies First Houston will be entitled to judicial review of the Secretary's decision to revoke its Medicare billing privileges and provider agreement, and because the harm that First Houston argues it will suffer if it is forced to exhaust its administrative remedies before seeking judicial review constitutes only an isolated, delay-related harm, the court concludes that the

_____

[9]Whether individual harm should be mitigated through waiver of some of the administrative exhaustion requirements was addressed by the Supreme Court in Eldridge, 96 S. Ct. 893, and is addressed here in the next section, i.e., § II.C.1(b).

<u>Illinois Council</u> exception does not apply. <u>See</u> <u>Physician Hospitals</u> <u>of America</u>, 691 F.3d at 659.

### **(2) Waiver of Some Exhaustion Requirements Recognized in <u>Eldridge</u> Does Not Apply**

Citing <u>Eldridge</u>, 96 S. Ct. at 893, and <u>City of New York</u>, 106 S. Ct. at 2022, and asserting that the substance of the allegations in this case are that the government is applying a clandestine policy to eliminate Texas home care providers, First Houston argues that the Secretary's administrative exhaustion defense does not apply to the facts of this case because "[t]his case does not affect the merits of Medicare benefits, and Plaintiff makes no claim to such benefits in disputing the illegal revocation brought by the government under the guise of 42 C.F.R. § 424.535."[10]

The Supreme Court's opinion in <u>Eldridge</u>, 96 S. Ct. at 893, does not provide an exception to the administrative exhaustion requirement, but instead prescribes when a court may waive some of the exhaustion requirements under § 405(g). <u>Id.</u> at 900. Explaining that there are waivable and nonwaivable components to § 405(g)'s requirement that an individual claimant present a claim to an agency before seeking judicial review, the Court stated that

> [t]he waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary. Absent such a claim there can be no

---

[10]Plaintiff's Amended Response, Docket Entry No. 22-2, p. 8.

> "decision" of any type. And some decision by the
> Secretary is clearly required by the statute.

Id. at 899. Stating that the exhaustion requirement should be

waived where the plaintiff raises at least a colorable claim that

is "entirely collateral" to its substantive claim, and where an

"erroneous termination would damage [the claimant] in a way not

recompensable through retroactive payments," id. at 901, the Court

held that the plaintiff's claim that a pre-deprivation hearing was

constitutionally required was "entirely collateral" to his

substantive claim of entitlement to disability benefits. Id. at

900-901. The Court explained that because of the plaintiff's

> physical condition and dependency upon the disability
> benefits, an erroneous termination would damage him in a
> way not recompensable through retroactive payments. Thus
> . . . denying Eldridge's substantive claim . . . or
> upholding it . . . at the post-termination stage . . .
> would not answer his constitutional challenge.

Id. at 901.

Because First Houston has presented its request for

reconsideration of the revocation and termination decisions of the

Secretary, First Houston -- like the plaintiff in Eldridge --

appears to have fulfilled the nonwaivable element of administrative

exhaustion, i.e., presentment to the Secretary. Therefore, the

court must determine if the remaining steps of administrative

exhaustion required in § 405(g) should be waived. In order to

waive the administrative exhaustion requirements, the court must

first find that the claims First Houston asserts in this case are

"entirely collateral" to its claim before the Secretary. The

Secretary argues that the Eldridge waiver does not apply because the claims that First Houston has asserted in this action are not "entirely collateral" to the substantive claims that First Houston has presented to the Secretary.[11] The Secretary explains that

> As [Eldridge] was further clarified in [City of New York], however, these types of collateral claims are ones in which the plaintiffs were neither seeking nor were awarded benefits. . .; here Plaintiff in substance and effect seeks relief that would eliminate a revocation determination and would enable Plaintiff to submit claims to the Medicare program. These claims are "inextricably intertwined" with benefit determinations. . . and their "standing and substantive basis" arise under the Medicare Act. . . Therefore the claims are not collateral . . . and the Court has no jurisdiction under this theory.[12]

The court agrees with the Secretary that the Eldridge waiver does not apply here.

The complaint in this action asserts claims for violation of First Houston's rights to due process and equal protection of the law, but also seeks injunctive and declaratory relief as well as damages (from defendant Palmetto GBA, L.L.C.) arising from its contention that the defendants' decisions to revoke its Medicare billing privileges and to terminate its Medicare provider agreement were in error. Although First Houston has framed the claims asserted in this action in constitutional terms, First Houston's claims in this case are essentially the same claims that First Houston made to the Secretary, i.e., claims seeking to rescind

---

[11]Secretary's Motion to Dismiss, Docket Entry No. 13, pp. 17-18.

[12]Id.

-18-

improper revocation of its Medicare billing privileges and provider agreement. See Affiliated Professional Home Health Care Agency ["APRO"] v. Shalala, 164 F.3d 282, 285-86 (5th Cir. 1999) (noting that "to fully address [the plaintiff health care agency's] claim[s] that [its] due process and equal protection rights were violated through the improper enforcement of Medicare regulations, a court would necessarily have to immerse itself in those regulations and make a factual determination as to whether [the plaintiff health care agency] was actually in compliance"). See also Cathedral Rock, 223 F.3d at 363 (explaining that the claims must be completely separate from the claim that the plaintiff is entitled to benefits or continued participation in the Medicare program; if they are "inextricably intertwined" with the claim for benefits or participation, they are not entirely collateral).

In APRO, 164 F.3d at 282, as here, a Medicare provider filed suit without first exhausting its administrative remedies alleging that the defendants, i.e., the Secretary and a government contractor like PGBA, improperly and arbitrarily enforced various Medicare rules and regulations. APRO argued that the court could waive exhaustion of administrative review if the claims it had asserted were collateral to those made to the Secretary and could not be remedied by administrative review. Rejecting APRO's contention that it had asserted collateral claims that could not be remedied by administrative review, the Fifth Circuit held that

APRO's claim is not a collateral claim for purposes of
exhaustion. Although its claim is framed in constitu-
tional terms and seeks compensatory and punitive damages,
APRO also seeks to rescind the termination of its
provider status and to halt the suspension of its
Medicare payments. Such relief is unquestionably
administrative in nature.

Additionally, to fully address APRO's claim that [its]
due process and equal protection rights were violated
through the improper enforcement of Medicare regulations,
a court would necessarily have to immerse itself in those
regulations and make a factual determination as to
whether APRO was actually in compliance. Given the
administrative nature of that inquiry, it cannot be
reasonably concluded that APRO's claim is collateral to
a claim for administrative entitlement.

The constitutional nature of APRO's claim does not, by
itself, alter that conclusion. The Supreme Court has
recognized that the constitutional tenor of a claim is
not a determinative factor in deciding whether a claim is
collateral. Instead, the exhaustion requirement is
applicable to a constitutionally-based claim when that
claim is "inextricably intertwined" with a substantive
claim of administrative entitlement. . . In this case,
there is little doubt that APRO's claim is "inextricably
intertwined" with a demand for benefits.

APRO, 164 F.3d at 285-86 (citing Heckler v. Ringer, 104 S. Ct.

2013, 2020-23 (1984), and Weinberger v. Salfi, 95 S. Ct. 2457,

2467-68 (1975)). See also Cathedral Rock, 223 F.3d at 363 (holding

that plaintiff's claim was not collateral "because a favorable

resolution of [its] claim would result in the reinstatement of its

Medicare provider agreement").

As in APRO, 164 F.3d at 282, the claims asserted in First

Houston's complaint are fundamentally claims for Medicare benefits

and thus are not entirely collateral either to the claims that

First Houston made to the Secretary, or to claims for benefits that

Medicare providers are regularly required to present to the

-20-

Secretary in order to exhaust their administrative remedies before filing suit in federal court. First Houston has framed its claims in constitutional terms by alleging denial of due process and equal protection of the law, but First Houston essentially seeks to prevent improper revocation of its Medicare billing privileges and provider agreement, which are administrative remedies. See APRO, 164 F.3d at 285-86 (claim not collateral even though framed in constitutional terms because Plaintiff sought to halt suspension of its Medicare payments). Although First Houston has sued PGBA for money damages instead of Medicare benefits, the money damages sought would compensate First Houston for revocation of its Medicare billing privileges and termination of its Medicare provider agreement. Thus, First Houston's claim for money damages is an indirect suit for Medicare benefits.

If First Houston were to succeed in obtaining permanent injunctive or declaratory relief, defendants would be prevented from recouping any alleged overpayment, thus giving First Houston a greater entitlement to present and future Medicare benefits. Moreover, the court could not fully address First Houston's claims that its constitutional rights were violated through improper enforcement of Medicare regulations without having "to immerse itself in those regulations and make a factual determination as to whether [defendants were actually in compliance]." Id.[13] The court

---

[13]See also Plaintiff's Motion for Limited Discovery on Jurisdictional Issues and Brief in Support, Docket Entry No. 27, (continued...)

therefore concludes that the claims First Houston has asserted in the complaint filed in this court are not so collateral to the claims that First Houston made to the Secretary to rescind revocation of its Medicare billing privileges and termination of its Medicare provider agreement that the exhaustion requirement should be waived as to those claims.

### (3) The "Clandestine Policy" Exception to the Exhaustion Requirement Recognized in City of New York Does Not Apply

First Houston asserts that the court can exercise subject matter jurisdiction because this lawsuit falls under the clandestine agency policy exception to the exhaustion requirement recognized by the Supreme Court in City of New York, 106 S. Ct. at 2022. The Secretary argues that the "clandestine policy" exception

---

[13] (...continued)
pp. 2-5 (articulating a number of underlying legal and factual disputes that would require the court to immerse itself in the Secretary's regulations, e.g., whether First Houston failed to give notice of a change of address within 90 days as required by 42 C.F.R. § 424.516(e); whether First Houston was required to give notice of its address change prior to the June 26, 2014, on-site review; whether PGBA's revocation action was premature and denied First Houston the full 90-day period to file a CMS-855A to report its relocation; whether PGBA intentionally delayed issuance of the notice of revocation until First Houston's 90-day period for reporting its change of address had expired; whether First Houston is operational at its new location; and whether the regulations support a revocation action based upon the fiction that a provider is not operational at its former address); Plaintiff's Emergency Motion for Mandamus Relief and Brief in Support Thereof, Docket Entry No. 28, pp. 6-9 (raising issues as to whether the statute or the regulations require providers to obtain permission from CMS to relocate, and whether revocation was unwarranted and illegally imposed).

is inapplicable because the facts of this case are materially distinguishable from those at issue in City of New York. The Secretary argues:

> The case before the Court is distinguishable from [City of New York] in several prominent ways: 1) Plaintiff fails to identify any "clandestine policy;" 2) it challenges the application of promulgated regulations (42 C.F.R. § Part 424, Subpt. P); and 3) Plaintiff is a business entity seeking to challenge a billing revocation; it is not a class of mentally-impaired individuals seeking critical Social Security benefits.[14]

In City of New York the plaintiffs brought a due process challenge based on an alleged clandestine, internal agency policy that had the effect of denying them disability benefits. Id. at 2024. "The gravamen of [the plaintiffs'] complaint was that [the Secretary] had adopted an unlawful, unpublished policy under which countless deserving claimants were denied benefits." Id. at 2026. Plaintiffs contended that the systemwide policy eliminated certain steps from the agency's standard evaluation process, thereby bypassing an established requirement for an individualized assessment of each claimant's ability to work. Id. Upon comparing the facts in City of New York to those in Eldridge, the Supreme Court concluded that the plaintiffs' claims were collateral to their claims for benefits, in part because "[t]he class members neither sought nor were awarded benefits in the District Court, but rather challenged the Secretary's failure to follow the applicable regulations." Id. at 2032.

---

[14]Secretary's Motion to Dismiss, Docket Entry No. 13, p. 16.

The present case is distinguishable. Unlike the plaintiffs in City of New York, First Houston does not allege any facts suggesting the existence of a clandestine, unpublished policy and does not challenge the process by which any such clandestine policy was formulated. The administrative appeal process available to First Houston is the same process that is available to all Medicare providers. That process is published in the United States Code and the Code of Federal Regulations. See 42 U.S.C. § 405(b), § 1395cc(h); 42 C.F.R. § 498.5(a). Accordingly, the court concludes that the claims that First Houston has asserted in the complaint filed in this action are not entirely collateral to the claims that First Houston made to the Secretary, and that because the claims asserted in this action are not entirely collateral to the claims made to the Secretary, the requirement that First Houston exhaust its administrative remedies before seeking judicial review should not be waived as to those claims.

(b)  The Court Lacks Mandamus Jurisdiction

The mandamus statute provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Although the Supreme Court has not decided whether mandamus relief is available for claims arising under the Medicare Act, see Heckler, 104 S. Ct. at 2022, the Fifth Circuit has

determined that § 405(h) does not preclude mandamus jurisdiction to review otherwise unreviewable procedural issues. Wolcott, 635 F.3d at 764-65 (citing 28 U.S.C. § 1361). However, the mandamus statute does not provide a jurisdictional basis for the other types of relief that First Houston seeks from the Secretary, i.e., injunctive relief and declaratory judgment. Id. at 766. Moreover, mandamus is not appropriate when a plaintiff seeks redetermination of an administrative decision, or when a "judicial decision favorable to the plaintiff would affect the merits of whether the plaintiff is entitled to benefits." Id. at 764. For the reasons stated in § II.C.1(a) and (b), above, the court has already concluded that the claims First Houston has asserted in this action do not raise otherwise unreviewable procedural issues but, instead, seek redetermination of administrative decisions that if decided favorably to First Houston would entitle First Houston to benefits in the form of participation in the Medicare program. For these reasons, the court concludes that it lacks jurisdiction to review First Houston's claim for mandamus. Alternatively, for the reasons stated in § II.C.2, below, the court concludes that the Secretary is entitled to dismissal of First Houston's claim for mandamus for failure to state a claim for which relief may be granted.

### 2.  Plaintiff Fails to State a Claim for Mandamus Relief

Mandamus may only issue when (1) the plaintiff has a clear right to relief; (2) the defendant a clear duty to act, and (3) no

-25-

other adequate remedy exists. <u>Wolcott</u>, 635 F.3d at 768. Moreover, the duty at issue must be "ministerial and so plainly prescribed as to be free from doubt." <u>Giddings v. Chandler</u>, 979 F.2d 1104, 1108 (5th Cir. 1992). "[M]andamus does not create or expand duties, but merely enforces clear, non-discretionary duties already in existence." <u>Wolcott</u>, 635 F.3d at 768.

First Houston seeks "an order directing Defendants to rescind the revocation of its Medicare billing number and its termination from the Medicare program because it is indisputable [that] the home care provider is 'operational,' and it is an abuse of discretion to impose the unwarranted sanctions."[15] Plaintiff argues that

> [t]he revocation imposed by Defendants[] under 42 C.F.R. § 424.535(a)(5) was imposed only because the provider was allegedly "no longer operational" — albeit at the *wrong* address. Plaintiff is operational and did not warrant the revocation. Yet, the government would rather force the provider's closure than admit it was mistaken in revoking the provider's billing privilege. Without doubt, it is a *clear abuse of discretion* for Defendants to impose the *unwarranted* revocation, ignore evidence that indisputably establishes operational status, and then deny Plaintiff meaningful and legitimate review procedures. Because the action can be classified as challenging the procedures used in administering the Medicare Act, mandamus jurisdiction is available.[16]

---

[15]Plaintiff's Original Complaint, Docket Entry No. 1, p. 1. <u>See also</u> Plaintiff's Emergency Motion for Mandamus Relief, Docket Entry No. 28, p. 1 ("Plaintiff seeks mandamus relief to compel the HHS Secretary to rescind a revocation action that was imposed in violation of her duties under the law.").

[16]Plaintiff's Response to Defendants' Motion to Dissolve *Ex Parte* Temporary Restraining Order, Docket Entry No. 11, p. 4.

Even if mandamus jurisdiction exists, First Houston has not stated a plausible claim for mandamus relief because First Houston has failed to plead facts that permit the court to draw a reasonable inference (1) that First Houston has a clear right to rescission of the defendants' decisions to revoke its Medicare billing privileges and provider agreement, (2) that the Secretary has a clear, non-discretionary duty to rescind its decision to revoke First Houston's Medicare billing privileges and provider agreement, or (3) that no other adequate remedy exists. Nor has First Houston pleaded any facts suggesting that the Secretary has denied First Houston <u>access</u> to administrative review, or that the administrative review procedures to which First Houston has access are inadequate to afford First Houston the relief it seeks. Instead, First Houston argues only that administrative review is "not winnable."[17] Therefore, the court concludes that the Secretary's Rule 12(b)(6) motion to dismiss First Houston's claim for mandamus relief for failure to state a claim should be granted.

## III. **Conclusions and Order**

For the reasons stated in § II.C.1, above, the court concludes that Secretary Burwell is entitled to dismissal of First Houston's claims because the court lacks jurisdiction to adjudicate them. Accordingly, the claims asserted against Secretary Burwell are **DISMISSED** for lack of jurisdiction. Alternatively, for the reasons

---

[17]<u>Id.</u> at 12.

stated in § II.C.2, above, the court concludes that Secretary Burwell is entitled to dismissal of First Houston's claim for mandamus for failure to state a claim for which relief may be granted. Therefore, Secretary Burwell's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Docket Entry No. 13) is **GRANTED**.

Because the court has concluded that it lacks jurisdiction to consider any of the claims that First Houston has asserted in this action, Plaintiff's Motion for Limited Discovery on Jurisdictional Issues (Docket Entry No. 27) and Plaintiff's Emergency Motion for Mandamus Relief (Docket Entry No. 28) are **DENIED** as **MOOT**.

**SIGNED** at Houston, Texas, on this 16th day of December, 2014.

SIM LAKE
UNITED STATES DISTRICT JUDGE